IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

ANDREW KIMBLE, )
 )
      Plaintiff, )
 )
v. ) Case Number CIV-17-971-C
 )
CR OPERATING COMPANY, INC., d/b/a )
APPLE CREEK ESTATES and/or )
APPLE CREEK APARTMENTS, and )
APPLE CREEK ESTATES, L.L.C., )
 )
      Defendants. )

MEMORANDUM OPINION AND ORDER

Defendant, CR Operating Company, Inc. filed a Motion for Partial Summary Judgment (Dkt. No. 55). Plaintiff filed a Brief in Opposition (Dkt. No. 58) and Defendant filed a Reply (Dkt. No. 60). The matter is fully briefed and the motion is now at issue.

I. Background

In early 2015, Andrew Kimble moved into Apple Creek Estates and/or Apple Creek Apartments (hereafter "Apple Creek Apartments"). Kimble continuously used his balcony to smoke cigarettes and leaned against the balcony railing on multiple occasions without issue. On January 25, 2016, Kimble leaned against the railing and fell to the ground. Kimble suffered numerous injuries when he fell from the second story balcony including head, wrist, and back injuries with the potential for future surgery to correct additional medical issues. Kimble underwent multiple surgeries and missed months of work as a result of the fall.

Dr. Vinod Gupta owns Apple Creek Apartments through Apple Creek Estates, LLC. Dr. Vinod Gupta and his wife, Chandra Gupta, are the only shareholders of CR Operating

Company, Inc., which is the management and operating company for Apple Creek Estates and/or Apple Creek Apartments.

Plaintiff brought claims for negligence and gross negligence against Defendant, CR Operating Company, Inc., d/b/a Apple Creek Apartments and Apple Creek Estates, L.L.C. Plaintiff also seeks to recover punitive damages from Defendants. Plaintiff argues Defendants recklessly disregarded Plaintiff's rights from which malice and evil intent can be inferred. Defendant CR Operating Company, Inc., seeks partial summary judgment on Plaintiff's claims for punitive damages.

II. Summary Judgment Standard

A key policy goal and primary principle of Fed. R. Civ. P. 56 is "to isolate and dispose of factually unsupported claims or defenses." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Fed. R. Civ. P. 56 sets the standard for summary judgment:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).

Summary judgment is appropriate "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material*

fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). It is also well established that the "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion . . . which it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 322. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (footnote omitted). "In its review, the Court construes the record in the light most favorable to the party opposing summary judgment." Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III. Analysis

At the outset of this analysis, this Court notes that Defendant Apple Creek Estates, LLC, is the owner of Apple Creek Apartments. CR Operating Co., Inc. is functioning as a management company for the landowner, Defendant Apple Creek Estates, LLC. (Mem. Op. and Order, Dkt. No. 61.) This Court will limit its inquiry to discuss whether there is competent evidence from which a reasonable jury could find reckless disregard, sufficient to support an inference of evil intent and malice on the part of moving Defendant.

Punitive damages are "generally considered to be an element of recovery of the underlying cause of action; it does not constitute a separate cause of action." Rodebush v. Okla. Nursing Homes, Ltd., 1993 OK 160, ¶ 21, 867 P.2d 1241, 1247. Under 23 Okla. Stat. § 9.1, "Plaintiffs seek punitive damages pursuant to 23 Okla. Stat. § 9.1 which allows such a recovery where the jury finds by "clear and convincing evidence" that "the defendant has been guilty of reckless disregard for the rights of others." Dutton v. Merit Energy Co., LLC, No. CIV-13-66-D, 2014 WL 2040615, at *3 (W.D. Okla. May 16, 2014) (quoting 23 Okla. Stat. § 9.1).

Under the instant circumstances, this Court "must 'review the summary judgment issue bearing in mind the heightened evidentiary standard for a [punitive damage] claim under Oklahoma law.'" Id. at *3 (quoting N. Tex. Prod. Credit Ass'n v. McCurtain Cnty. Nat'l Bank, 222 F.3d 800, 815 (10th Cir. 2000)). "[T]he inquiry involved in a ruling on a motion for summary judgment . . . necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." Anderson, 477 U.S. at 252. "Under § 9.1, for punitive damages to be allowed there **must** be evidence, **at a minimum**, of reckless disregard toward another's rights from which malice and evil intent may be inferred." Badillo v. Mid Century Ins. Co., 2005 OK 48 ¶ 66, 121 P.3d 1080, 1106. "One acts with reckless disregard if he 'was either aware, or did not care, that there was a substantial and unnecessary risk that [his] conduct would cause serious injury to others.'" Therrien v. Target Corp., 617 F.3d 1242, 1259 (10th Cir. 2010) (quoting Okla. Unif. Civil Jury Instr. No. 5.6 (3d ed. 2008 & Supp. 2014)). The level of conduct "must have been unreasonable under the circumstances, and also there must have been a high probability that the conduct would cause serious harm to

4

another person." Okla. Unif. Civil Jury Instr. No. 5.6 (3d ed. 2008 & Supp. 2014). "While the proof for punitive damages will probably overlap with that of the underlying cause of action, the plaintiff need not prove all elements of the underlying cause of action by clear and convincing evidence." Rodebush, 1993 OK 160, ¶ 23, 867 P.2d at 1247-48. The Tenth Circuit further "interpret[ed] the clear language of the statute to mean that only those specific types of conduct which would support an award of punitive damages must be shown by clear and convincing evidence." Id. at 1248.

Defendant argues that "punitive damages are reserved for cases of extreme and outrageous behavior which shows a clear disregard for human life." (Pl.'s Mot. for Summ. J., Dkt. No. 55, p. 26) (emphasis omitted). Defendant argues that it is not an "insurer of the Plaintiff's safety." (Id.) Defendant analogizes Therrin, 617 F.3d at 1246-47, and draws a factual parallel between that case and the instant circumstances. In Therrin, the Tenth Circuit affirmed that a department store's policies and procedures did not create a "high probability of serious harm to another person." Id., 617 F.3d at 1259. The Court found that it would be unreasonable to infer evil intent from mere negligence. Id. Defendant characterizes that, similar to the instant circumstances, in Therrin the "plaintiff's injury constituted an unforeseen, albeit foreseeable, accident." (Pl.'s Mot. for Summ. J., Dkt. No. 55, p. 27-28.) Defendant cites multiple other cases where the level of conduct reached in the case only involved negligence; here, Plaintiff is also claiming gross negligence. Defendant argues that even though Gupta was responsible for making decisions regarding inspecting and maintaining the Apple Creek Apartments, the fault lies with the independent contractor, Armor Siding, LLC. Defendant spends the entirety of its brief arguing that CR Operating Co,

5

Inc., and Gupta had no idea or notice of the danger posed by the removal of the wooden blocks on Plaintiff's balcony.

Plaintiff argues that it is not "required to prove reckless conduct. He must only show this Court a piece of circumstantial or direct evidence that could create an inference of reckless conduct." (Pl.'s Brief in Opp. to Def. Mot. for Summ. J., Dkt. No. 58, p. 24.) Plaintiff argues "there are numerous disputed material facts that support, at a minimum, an inference of gross negligence, reckless conduct and/or willful disregard by CR Operating." (Pl.'s Brief in Opp. to Def. Mot. for Summ. J., Dkt. No. 58, p. 24.) Plaintiff focuses his argument on the life-threatening danger that was created by the independent contractor, hired by Apple Creek Estates, LLC, to complete renovations on the apartment complex.

In the instant circumstances, the parties do not dispute that Plaintiff leaned against the balcony railing and fell through the balcony railing because Armor Siding, LLC, failed to properly secure the railing. However, there is a genuine issue of fact regarding Defendant's knowledge about the independent contractor's quality of work that could support an inference of reckless conduct.

> Q. So, if I understand your testimony, you said that in some of these inspections, comments would be made about needing to replace wood that had rotted?
> A. Yes.
> Q. And you're now saying those comments didn't have anything to do with you choosing to do the renovation?
> A. Sir, in their inspections, they would say, like, Building number six, we noticed, you know, this wood in the far facia is bad, please replace it. So it's like piecemeal here, piecemeal there, whatever they suggest us, we would to [sic] that.

(Pl.'s Mot., Dkt. No. 58-1, p. 98, ll. 3-14 .)

> Q. Did you have any concerns about his workmanship?

6

> A. You know, it was like - - I personally never pointed any workmanship or anything, but it was very obvious that he's failing.

(Pl.'s Mot., Dkt. No. 58-1, p. 178, ll. 21-25)

Dr. Gupta also testified that there were issues with the contractor's level of work and work product "[the contractor] was not following anything, he was not supervising." (Pl.'s Mot., Dkt. No. 58-1, p. 178, ll. 4-5). Here, there is a lack of information and conflicting testimony between Kayla Stone and Dr. Gupta regarding whether Defendant CR Operating Co. knew whether the wooden trim was being removed from the balcony and the potential consequences of removing the wood trim. Kayla Stone also made statements that the independent contractor was not meeting certain workmanship standards. (Def.'s Mot., Dkt. No. 55-6, p. 171 ll. 1-25, p. 172, ll. 1-25.)

Additionally, there are also disputed genuine issues of material fact regarding whether notice about the balcony work was given to Plaintiff. The work on the balcony was completed over a period of months and the work was potentially life-threatening.

Dr. Gupta testified:

> A. And if I remember, when the balcony work started, that when we started repairing all the balconies, all the notices were given to the tenants at that time that we are working on your balconies and please refrain from going to your balconies. So, we took all the precautions when the balcony work started and we were repairing all the balconies.

(Pl.'s Mot., Dkt. No. 58-1, p. 83, ll. 9-15.)

Plaintiff Kimble testified:

> Q. And when you got back was there a notice on your door that told you not to go out on your balcony?
> A. No, sir.
> Q. You never saw that?
> A. No, sir.

    Q.  Did you ever see any notices that were put up saying, 'dear residents, don't go out on your balcony because we're doing work?'
    A.  No, sir.

(Pl.'s Mot., Dkt. No. 58-4, p. 150, ll. 10-19.)

Defendant relies solely upon the idea that Armor Siding, LLC, functioning as an independent third contractor, is solely responsible for the project to secure the balcony's wood trim.  Plaintiff has presented evidence that refutes the timeframe of the repairs, the quality of the work, and whether proper notice was given, and that Defendant was generally aware that the independent contractor was not meeting agreed upon workmanship standards.  The standard of proof to entitle Plaintiff to punitive damages is a high one.  However, viewing the current evidence in the light most favorable to Plaintaiff, this Court finds that there are genuine issues of material fact that suggest a basis for Plaintiff's punitive damages recovery.

## IV.  Conclusion

As a result of this analysis, Defendant, CR Operating Company, Inc.'s, Motion for Partial Summary Adjudication of Plaintiff's Claim for Punitive Damages (Dkt. No. 55) is DENIED.

IT IS SO ORDERED this 21st day of May, 2018.

                                                        ROBIN J. CAUTHRON
                                                       United States District Judge